ELECTRONICALLY
FILED
Dec 29 2023
U.S. DISTRICT COURT
Northern District of WV

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **OWENS & MINOR DISTRIBUTION, INC.,** | Case No.     **1:23-CV-109 (Kleeh)** |
| **Plaintiff,** | |
| v. | |
| **WESTRIDGE COMMERCE CENTRE DEVELOPMENT 2E, LLC,** | |
| **Defendant.** | |

**OWENS & MINOR DISTRIBUTION, INC.'S
<u>COMPLAINT FOR DECLARATORY RELIEF</u>**

Plaintiff Owens & Minor Distribution, Inc. ("O&M"), through counsel, and pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, files its Complaint for Declaratory Relief ("Complaint'), and respectfully requests that this Court declare the rights and responsibilities of the parties relative to the Lease Agreement (the "Lease") dated July 21, 2022, between O&M and Defendant WestRidge Commerce Centre Development 2E, LLC ("WestRidge"), a copy of which is attached to this Complaint as **Exhibit** "**A**."

The main questions raised by O&M's Complaint for Declaratory Relief are whether WestRidge has breached the Lease by, among other acts and omissions to be proven at trial, failing and refusing to diligently pursue completion of the Landlord's Work and failing and refusing to obtain financing necessary for completion of the Landlord's Work. And, if so, a determination of the remedies available to O&M as a result of WestRidge's breach of the Lease; specifically, whether O&M is entitled to terminate the Lease as a result of WestRidge's refusal to perform under

and repudiation of the Lease. In that regard, O&M complains of and requests relief against WestRidge as follows:

## INTRODUCTION

1.       This action arises from WestRidge's refusal to perform its development obligations under a commercial lease between WestRidge and O&M for an intended medical supply distribution facility in Morgantown, West Virginia in an attempt to renegotiate the Lease to be more financially favorable for Westridge and as a result of Westridge's ongoing financial issues.

## PARTIES, JURISDICTION, AND VENUE

2.       O&M is a Virginia corporation with its principal place of business in Mechanicsville, Virginia that is also registered to do business in the State of West Virginia.

3.       WestRidge is a West Virginia limited liability company with its principal place of business in Morgantown, West Virginia.

4.       This Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between O&M, a citizen of the Commonwealth of Virginia, and WestRidge, a citizen of the State of West Virginia, and the amount in controversy between the parties exceeds $75,000.00, as it is tied to a multi-million-dollar commercial development and lease.

5.       Venue is proper in this Court and District pursuant to 28 U.S.C. § 1391(a), as the United States District Court for the Northern District of West Virginia embraces the location of the real property that is the subject of the Lease in dispute and the location of WestRidge's principal place of business.

6.       This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 2202, and Rule 57 of the Federal Rules of Civil Procedure.  There is a dispute

as to whether WestRidge has breached the Lease by, among other acts and omissions to be proven at trial, failing and refusing to diligently pursue completion of the Landlord's Work and failing and refusing to obtain financing necessary for completion of the Landlord's Work.  And, if so, a determination of the remedies available to O&M as a result of WestRidge's breach of the Lease; specifically, whether O&M is entitled to terminate the Lease as a result of WestRidge's refusal to perform under and repudiation of the Lease.  There is an actual controversy between O&M and WestRidge concerning their adverse interests in the matters in dispute and a declaratory judgment is required as to WestRidge's breach(es) of the Lease and O&M's right to terminate the Lease.

7.       This Court's jurisdiction and proper venue in this Court were further agreed upon by the parties as a material term of the Lease that is the subject of this action.

## FACTUAL BACKGROUND

8.       O&M is part of a global healthcare solutions company that integrates product manufacturing and delivery, home health supply, and perioperative services to support care through the hospital and into the home with a mission of empowering its customers to advance healthcare.

9.       In November 2021, O&M entered into an agreement with West Virginia United Health System, Inc. ("WVU Medicine") to provide WVU Medicine with acute care distribution of medical/surgical and related products (the "WVU Agreement").

10.      As part of the WVU Agreement, O&M is required to use commercially reasonable efforts to build a structure and distribute products from within the State of West Virginia within a specific timeframe agreed upon between O&M and WVU Medicine.

11.      In an effort to fulfill this obligation, in July 2022, O&M entered into the Lease with WestRidge under which WestRidge, by and through its Owner/Manager, Ryan Lynch ("Lynch"),

agreed to construct a distribution center at 34 Headwall Drive, Morgantown, West Virginia for

O&M to lease on a long-term basis (the "Lease").

12.     Under the Lease, WestRidge is required to construct an approximately 346,375

square foot facility for O&M's use (the "Landlord's Work").

13.     WestRidge and Lynch agreed to use commercially reasonable efforts to achieve

substantial completion of the Landlord's Work by December 1, 2023, and in any event, to complete

construction of the facility by February 29, 2024.

14.     The initial planned phase of construction included substantial mass earthwork,

erosion and sediment control, and installation of stormwater and other infrastructure to prepare the

property for construction of the facility itself (the "Sitework").

15.     The parties anticipated the Sitework to take about six (6) months from

commencement and for it to be completed by mid-May 2023.

16.     Almost immediately after executing the Lease, WestRidge and Lynch began

delaying the construction process under the unsupported guise of a need for additional design input

from O&M.

17.     In reality, however, the Sitework was planned to run concurrently with the final

design process for the structure, and because the Sitework was planned to take longer than the

structure's design process, the construction project's "critical path" ran through the Sitework, not

the building design.

18.     Therefore, at the time WestRidge claimed design input from O&M was delaying

the project, no aspect of the structure's design was ever a "critical path item" that should—or

could—have impacted the overall project's completion schedule.

19.     Further, when O&M and WestRidge executed the Lease, O&M had provided WestRidge full schematic designs for the facility, as well as a full projected budget for construction.

20.     Simply put, despite attempts by WestRidge to suggest that the building design was the reason it had not moved forward with the Sitework, nothing—apart from WestRidge and Lynch's own actions, including an inability to secure promised financing—was preventing it from commencing and completing the Sitework as originally planned.

21.     When WestRidge did not begin the Sitework in August 2022, as originally scheduled, and delayed  entering into agreements with contractors for completion of the remaining portions of the Landlord's Work, O&M raised concerns to WestRidge about WestRidge's ability to finance and perform the required development of the property.

22.     At the time, WestRidge and Lynch assured O&M that it was fully capable of obtaining financing and completing the required work in a timely manner.

23.     Nonetheless, despite its assurances to the contrary, in December 2022, after months of delay, WestRidge informed O&M that it had not yet been able to acquire financing necessary for completion of the Landlord's Work.

24.     WestRidge's purported reasoning for having not obtained financing was the increase in interest rates between July and December 2022.

25.     Upon information and belief, regardless of any interest rate increases that may have contributed to WestRidge's inability to obtain financing, the true explanation for WestRidge's inability to obtain financing was its own internal financial distress, and the primary impact of the interest rate increase was simply to make the Lease less profitable for WestRidge than it had anticipated.

26.     As a result, in January 2023, WestRidge—with no basis for doing so under the Lease—proposed increasing the rent payable by O&M during the Lease term.

27.     WestRidge proposed this unanticipated rent increase despite the fact that the Lease contains no provision(s) allowing WestRidge to alter the rent payable by O&M due to changes in WestRidge's anticipated financing arrangements.

28.     Accordingly, O&M rejected WestRidge's unsupported attempt to simply renegotiate the Lease into a more profitable endeavor for WestRidge and Lynch.

29.     However, due to WestRidge's apparent unwillingness to continue with the Lease as originally agreed upon and O&M's need to timely get the distribution center up and running, O&M engaged in extensive discussions with WestRidge about potentially restructuring the entire transaction.

30.     When these restructuring discussions began during the Spring of 2023, WestRidge also started the Sitework.

31.     However, in June 2023, WestRidge apparently became displeased with the direction of the restructuring negotiations, and—again with no basis to do so under the Lease—informed O&M that the Sitework "would be idled until more certainty regarding the outcome of those discussions was known."

32.     In other words, WestRidge stopped the Sitework and blatantly refused to fulfill its commitments under the Lease as a negotiation tactic to try to strongarm O&M into a more favorable deal for WestRidge.

33.     WestRidge did so knowing that—and, upon information and belief, because—O&M was relying on WestRidge's completion of the Landlord's Work to comply with the WVU Agreement.

34.     Despite WestRidge's tactics, because O&M needed to find the most expedient way to comply with the WVU Agreement and other economic development agreements, O&M continued to discuss with WestRidge potential ways to restructure the transaction in a mutually beneficial way.

35.     However, at no time did O&M repudiate the Lease or inform WestRidge that O&M did not intend to fully enforce the terms of the Lease.

36.     In fact, O&M consistently attempted to push WestRidge and Lynch toward compliance with the Lease.

37.     The parties' discussions culminated in an August 28, 2023 letter from WestRidge to O&M that indicated WestRidge would not move forward with the Landlord's Work unless O&M agreed to a lease amendment fundamentally altering the parties' original agreement and making the arrangement more profitable for WestRidge.

38.     While it attempted to explain away its repudiation of the Lease as being due to "unforeseen events outside [its] control[,]" WestRidge's August 28, 2023, letter was unequivocal in its indication that WestRidge would not be moving forward with the original deal under the Lease although it had no basis in doing so pursuant to the terms of the Lease.

39.     Given WestRidge's unequivocal repudiation of its obligations under the Lease, it became certain that the Landlord's Work would not be completed by the February 29, 2024, deadline in the Lease.

40.     WestRidge's letter also made it clear that WestRidge would not be obtaining any construction or permanent financing to fulfill WestRidge's obligations under the Lease.

41.     Therefore, O&M, through legal counsel, sent WestRidge a "Default Notice" on September 18, 2023, declaring WestRidge in default under the Lease for failing to diligently

pursue completion of the Landlord's Work and failing to obtain financing in contradiction of WestRidge's representations in the Lease.

42.    Pursuant to the Lease, the O&M Default Notice to WestRidge provided WestRidge a thirty-day period to cure its defaults.

43.    WestRidge made no effort to cure its defaults, and instead responded with an October 10, 2023, letter doubling down on its prior assertions that it needed design input from O&M to move forward and entirely blaming O&M for WestRidge's failures to obtain financing and timely complete the Landlord's Work.

44.    WestRidge also asserted that, despite WestRidge's refusal to move forward with the Landlord's Work, O&M had no ability to terminate the Lease.

45.    Instead, WestRidge claimed that O&M's only option was to take over the Landlord's Work, pay for the Landlord's Work itself, and move forward with the original deal struck in the Lease—a deal WestRidge had already asserted was unworkable and which it had already repudiated.

### COUNT ONE
### (Declaratory Judgment – Breach of Lease)

46.    O&M incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein.

47.    Pursuant to the Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, O&M has standing as a person interested under a contract to bring an action for a declaration of rights under the Lease.

48.    There is a dispute as to whether WestRidge has breached the Lease and, if so, the remedies available to O&M as a result of WestRidge's breach of the Lease, specifically whether

O&M is entitled to terminate the Lease as a result of WestRidge's refusal to perform under and repudiation of the Lease.

49.     There is an actual controversy between O&M and WestRidge concerning their adverse interests in the matters in dispute.

50.     A declaratory judgment is required as to WestRidge's breach(es) of the Lease and O&M's right to terminate the Lease.

51.     WestRidge entered into an enforceable contract with O&M in the form of the Lease.

52.     As more fully set forth above, WestRidge breached the Lease by, among other acts and omissions to be proven at trial, failing and refusing to diligently pursue completion of the Landlord's Work and failing and refusing to obtain financing necessary for completion of the Landlord's Work.

53.     Therefore, O&M is entitled to a declaratory judgment establishing that: (a) WestRidge breached the Lease by refusing to perform the Landlord's Work and by failing to obtain financing necessary for completion of the Landlord's Work; (b) O&M is entitled to terminate the Lease with immediate effect; and, (c) as a result of WestRidge's breach(es) of the Lease, O&M owes WestRidge no monetary sums under the Lease.

**COUNT TWO**
**(In the Alternative, Rescission of the Lease)**

54.     O&M incorporates the preceding paragraphs of this Complaint by reference as if fully set forth herein, except that O&M's claim for rescission of the Lease is plead in the alternative to its claim for declaratory judgment.

55.     WestRidge entered into a written contract with O&M in the form of the Lease.

56.     As more fully described above, WestRidge refused to perform under the Lease and, through its August 28, 2023, letter to O&M, unequivocally repudiated the Lease.

57.     Accordingly, O&M is entitled to judgment rescinding the Lease, declaring the Lease void *ab initio*, and compensating O&M for the costs it incurred (i) in furtherance of the Lease before WestRidge's repudiation and (ii) as a result of WestRidge's repudiation of the Lease.

## STATEMENT OF PRECISE RELIEF SOUGHT

58.     O&M hereby seeks a declaration from the Court that it is entitled to a declaratory judgment establishing that: (a) WestRidge breached the Lease by refusing to perform the Landlord's Work and by failing to obtain financing necessary for completion of the Landlord's Work; (b) O&M is entitled to terminate the Lease with immediate effect; and, (c) as a result of WestRidge's breach(es) of the Lease, O&M owes WestRidge no monetary sums under the Lease.

WHEREFORE, having complained of WestRidge and set forth its claims, O&M respectfully prays the Court for relief as follows:

1.     The Court, pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, enter a declaratory judgment establishing that:

    a.     WestRidge has breached the Lease by refusing to perform the Landlord's Work and by failing to obtain financing necessary for completion of the Landlord's Work,

    b.     O&M is entitled to terminate the Lease with immediate effect, and

    c.     O&M owes WestRidge no monetary sums pursuant to the Lease;

2.     In the alternative, the Court enter an order:

    a.     Rescinding the Lease and pronouncing it void *ab initio*, and

    b.     Awarding O&M a money judgment for its compensatory damages in the form of costs incurred by O&M:

          i.        In furtherance of the Lease prior to WestRidge's repudiation of the Lease, and

          ii.       As a result of WestRidge's repudiation of the Lease;

3.      The Court enter monetary judgment awarding O&M its reasonable attorneys' fees incurred as a result of WestRidge's breach of the Lease pursuant to the terms of the Lease and as otherwise permitted by applicable law; and

4.      The Court grant O&M such other and further relief as the Court deems just and proper.

               Respectfully submitted,
               SPILMAN THOMAS & BATTLE, PLLC

               */s/ Michael S. Garrison*
               Michael S. Garrison (WVSB #7161)
               Kelly J. Kimble (WVSB#7184)
               48 Donley Street, Suite 800 (Zip 26501)
               P.O. Box 615
               Morgantown, West Virginia 26507
               Telephone:    304-291-7920
               Facsimile:    304-291-7979
               mgarrison@spilmanlaw.com
               *Counsel for Owens & Minor Distribution, Inc.*